GREGORY S. GILCHRIST (State Bar No. 111536)
RYAN BRICKER (Cal. Bar No. 269100)
SOPHY TABANDEH (Cal. Bar No. 287583)
KOURTNEY SPEER (Cal. Bar No. 348243)
VERSO LAW GROUP LLP
565 Commercial Street, 4th Fl.
San Francisco, CA 94111
Telephone: (415) 534-0495
Email: greg.gilchrist@versolaw.com
ryan.bricker@versolaw.com
sophy.tabandeh@versolaw.com
kourtney.speer@versolaw.com

Attorneys for Plaintiff
LEVI STRAUSS & CO.

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LEVI STRAUSS & CO.,<br>Plaintiff,<br>v.<br>WAREHOUSE CO., LTD.,<br>Defendants. | Case No. 26-cv-13854<br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, DILUTION, UNFAIR COMPETITION, AND BREACH OF CONTRACT**<br>**(INJUNCTIVE RELIEF SOUGHT)**<br>**JURY TRIAL DEMAND** |

This lawsuit is necessary to stop Defendant Warehouse Co., Ltd. (hereinafter “Defendant” or “Warehouse”) from infringing, misusing and trading on Plaintiff Levi Strauss & Co.’s (“LS&Co.”) famous tab trademark (the “Tab trademark”) and famous arcuate stitching design trademark (the “Arcuate Trademark”). This is not the first time that LS&Co. has needed to file a lawsuit to address Warehouse’s blatant copying. In 2007, LS&Co. filed a lawsuit against Warehouse, among others, in the Northern District of California for trademark infringement, unfair competition, and dilution related to LS&Co.’s Tab Trademark. The case is titled *Levi Strauss & Co. v Self Edge, et. al.,* Case No. C-07-0245 PJH (the “2007 Lawsuit”). LS&Co. and Defendant Warehouse entered into a settlement agreement to resolve the 2007 Lawsuit, memorializing Warehouse’s commitment to refrain from using designs that infringed LS&Co.’s Tab and Arcuate trademarks, among other registered and

unregistered trademarks owned by LS&Co. (the "2008 Agreement"). In 2014, LS&Co. learned that Warehouse had resumed selling apparel bearing trademarks and designs which LS&Co. prohibited by the 2008 Agreement and which it maintains violate its intellectual property rights. LS&Co. and Defendant Warehouse entered into a second settlement agreement to resolve the matter (the "2014 Agreement"). In the 2014 Agreement, Warehouse reiterated its promise to refrain from having any involvement in promoting or selling garments bearing trademarks or designs that imitate LS&Co.'s famous trademarks. The 2008 Agreement and 2014 Agreement are collectively referred to as the "Prior Agreements."

Despite these Prior Agreements, Defendant Warehouse has resumed selling apparel bearing tab and stitching designs that are nearly identical to LS&Co.'s famous Tab and Arcuate trademarks, and that Warehouse agreed it would refrain from using pursuant to the parties' Prior Agreements. Warehouse sells these products under the WAREHOUSE and DENIME brands. Examples of Warehouse's infringing designs follow:






|  |  |
|---|---|

To stop Defendant from continuing to misuse and trade on LS&Co.'s famous Tab and Arcuate trademarks, reputation, and goodwill, LS&Co. now seeks preliminary and permanent injunctive relief as well as appropriate compensatory remedies and fees and costs necessitated by Defendant's conduct. LS&Co. alleges as follows:

**JURISDICTION, VENUE, AND INTRA-DISTRICT ASSIGNMENT**

1. Plaintiff LS&Co.'s claims arise under the Trademark Act of 1946 (the Lanham Act), as amended by the Trademark Dilution Revision Act of 2006 (15 U.S.C. §§ 1051, *et seq*.). This Court has jurisdiction over such claims pursuant to 28 U.S.C. §§ 1338(a) and 1338(b) (trademark and unfair competition), 28 U.S.C. § 1331 (federal question) and 15 U.S.C. § 1121 (Lanham Act). This Court has supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367.

2. LS&Co. is informed and believes that venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims asserted arose in this district. Venue is also proper in this district based on the parties' forum selection clause in the 2008 Agreement. That clause reads as follows: "This Agreement is entered into and is to be construed pursuant to the laws of California. Any action in contract arising out of or related to this Agreement shall be filed in the

United States District Court for the Northern District of California or San Francisco Superior Court. The parties hereby agree to be subject to the jurisdiction of such court for all purposes connected with any such action. The parties further agree that for the purpose of any such action, service by mail upon a party at the address set forth in this Agreement shall be deemed effective and adequate service."

3. As noted above, Defendant consented to this Court's exercise of personal jurisdiction over it when the parties negotiated and signed the 2008 Agreement. Personal jurisdiction over Defendant is also appropriate because the harm to LS&Co., caused in part by Defendant's breach of the parties' prior agreement, arises in the district. Defendant sells the products identified in this Complaint to customers in this district, as confirmed by LS&Co. through test purchases of products bearing the trademarks shown in Paragraph 21 below. Defendant also has directed its conduct into this district, including by targeting LS&Co., a corporation with its principal place of business in this district, by infringing LS&Co.'s trademarks.

4. Intra-district assignment to any division of the Northern District is proper under Local Rule 3-2(c) and the Assignment Plan of this Court as an "Intellectual Property Action."

## PARTIES

5. LS&Co. is a Delaware corporation with its principal place of business at Levi's Plaza, 1155 Battery Street, San Francisco, California 94111. Operating since approximately the 1850s, LS&Co. is one of the oldest and best-known apparel companies in the world. It manufactures, markets, and sells a variety of apparel.

6. LS&Co. is informed and believes that Defendant Warehouse Co., Ltd. is a Japanese joint stock company (*Kabushiki Kaishu*) with a registered business address of 3-5-19-217, Kitahama, Chuo-ku, Osaka City, Osaka, Japan. Warehouse Co., Ltd. is a signatory to the parties' Prior Agreements, and has through those agreements, agreed to accept service at its office at 1-1-6 Kitakyuhojimachi, Chuo-ku, Osaka City, Osaka, Japan.

7. LS&Co. is informed and believes that Defendant manufactures, distributes, and/or sells apparel, including pants, shirts, and jackets under the brand name WAREHOUSE and DENIME, bearing trademarks and branding elements that infringe LS&Co.'s Tab and Arcuate trademarks and breach the parties' prior settlement agreement.

## FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS

**LS&Co.'s Tab Trademark**

8. LS&Co. is the renowned apparel company whose founders invented the blue jean. LS&Co. has been manufacturing and selling apparel for over 150 years. From its gold rush beginnings, LS&Co. became one of the preeminent casual apparel companies of our time. The company's apparel production was protected as an "essential industry" during World War II, and exhibits at institutions such as the Smithsonian and Museum of Modern Art display photographs underscoring that LS&Co.'s products are a "staple of American culture, symbolizing youth, freedom, and effortless cool."

9. LS&Co. marks its products with trademarks that are famous around the world. Among these trademarks is LS&Co.'s famous Tab trademark, which, in one configuration that is used on many products, consists of a marker sewn into pocket seams or one of the regular structural seams of the garment. LS&Co. uses the Tab trademark on jeans, pants, jackets, shirts, skirts, shorts, accessories, and a variety of other clothing products.

10. LS&Co. continuously has used the Tab trademark for 90 years to distinguish its products. LS&Co. began to display the Tab trademark on the rear pocket of its pants in 1936 when its then National Sales Manager, Leo Christopher Lucier, proposed placing a folded cloth ribbon in the structural seams of the rear pocket. The purpose of this "tab" was to provide "sight identification" of LS&Co.'s products. Given the distinctiveness of the Tab trademark, Mr. Lucier asserted that "no other maker of overalls can have any other purpose in putting a colored tab on an outside patch pocket, unless for the express and sole purpose of copying our mark and confusing the customer."

11. The Tab trademark appears on almost all jeans sold by LS&Co. and is also featured on other apparel products, such as shirts, jackets, and accessories. Every year, millions of jeans, shirts, jackets, and other products are sold bearing the Tab trademark. As shown below, LS&Co. uses the Tab trademark in many colors, including red, white, blue, black, and silver.

/ / /

/ / /

| | | |
|---|---|---|
|   |   |  |
|  |  |  |
|  |  |  |

12. LS&Co. has used the mark as part of the corporate logo, in retail signage, and on the levi.com website as a sign of all the company's products and services. As shown above, the Tab trademark sometimes bears the famous LEVI'S® trademark, and sometimes bears only the ®

symbol. LS&Co. also owns registered and common law rights in word marks that reference the history and heritage of the Tab trademark, including LS&Co.'s BLUE TAB, RED TAB, ORANGE TAB, and SILVERTAB marks.

13. For many years prior to the events giving rise to this Complaint and continuing to the present, LS&Co. has annually spent great amounts of time, effort, and money advertising and promoting the products on which its Tab trademark is used. LS&Co. has sold hundreds of millions of these products bearing its Tab trademark, all over the world, accounting annually for billions of dollars in sales, including sales throughout the United States and in California. Through these investments and large sales, LS&Co. has created considerable goodwill and a reputation for high-quality, fashionable products.

14. The Tab trademark is famous and recognized around the world and throughout the United States by consumers as signifying authentic, high-quality LS&Co. garments. LS&Co.'s Tab trademark was famous among the general consuming public long before Defendant began selling the products challenged in this Complaint. LS&Co.'s Tab trademark is registered in the United States, in the State of California, and around the world. All registrations and common law marks for the Tab trademark are in full force and effect, valid and protectable, and exclusively owned by LS&Co. LS&Co. continuously has used each of its registered trademarks, from the registration date or earlier until the present, and during all times relevant to LS&Co.'s claims.

15. In addition to its common law rights, LS&Co. owns the following United States and California trademark registrations, among others, for its Tab trademark. The federal registrations have become incontestable under the provisions of 15 U.S.C. § 1065.

a. U.S. Registration No. 516,561 (first used as early as September 1, 1936; registered October 18, 1949);

b. U.S. Registration No. 1,157,769 (first used as early as September 1, 1936; registered June 16, 1981);

c. U.S. Registration No. 2,791,156 (first used as early as September 1, 1936; registered December 9, 2003);

d. U.S. Registration No. 356,701 (first used as early as September 1, 1936;

registered May 10, 1938);

e. U.S. Registration No. 577,490 (first used as early as September 1, 1936; registered July 21, 1953);

f. U.S. Registration No. 774,625 (first used as early as May 22, 1963; registered August 4, 1964);

g. U.S. Registration No. 775,412 (first used as early as October 9, 1957; registered August 18, 1964);

h. U.S. Registration No. 2,726,253 (first used as early as March 7, 1969; registered June 17, 2003);

i. U.S. Registration No. 2,620,144 (first used as early as February, 1999, registered September 17, 2002); and

j. California Registration No. 052312 (first used as early as March 7, 1969; registered June 12, 1974).

**LS&Co.'s Arcuate Trademark**

15. LS&Co. also owns the famous Arcuate trademark, which consists of a distinctive pocket stitching design that is the oldest known apparel trademark in the United States still in continuous use. LS&Co. has used the Arcuate trademark continuously since 1873 in interstate commerce on clothing products. LS&Co. first used the Arcuate trademark on jeans and later used it on other products as well.

16. LS&Co. owns common law and registered rights in its Arcuate trademark including the following United States Registrations, among others. The federal registrations have become incontestable under the provisions of 15 U.S.C § 1065.

a. U.S. Registration No. 404,248 (first used as early as 1873; registered November 16, 1943);

b. U.S. Registration No. 1,139,254 (first used as early as 1873; registered September 2, 1980);

c. U.S. Registration No. 2,791,156 (first used as early as September 1, 1936; registered

December 9, 2003); and

d. U.S. Registration No. 2,794,649 (first used as early as 1873; registered December 16, 2003).

17. The Arcuate trademark is valid and protectable, and exclusively owned by LS&Co. The Arcuate trademark is famous and is recognized around the world and throughout the United States by consumers as signifying authentic, high-quality LS&Co. products. The Arcuate trademark became famous prior to Defendant's conduct that is the subject of this Complaint.

**<u>Use of LS&Co.'s Trademarks Under License and in Brand Collaborations</u>**

16. LS&Co. also uses its Tab and Arcuate trademarks in connection with many of its collaborations with other brands, including collaborations with some of the most well-respected designers and fashion houses in the industry. Examples of LS&Co.'s use of its Tab and Arcuate trademarks on garments put out under these collaborations follow:

| LEVI'S® x REESE COOPER | |
| --- | --- |
|  |   |
| LEVI'S® x VALENTINO | |



LEVI'S® x MIU MIU




LEVI'S® x KENZO






LEVI'S® x KIKO KOSTADINOV



LEVI'S® x SACAI





17. In addition to using the Tab and Arcuate trademarks on products, LS&Co. also uses and has used the Tab trademark mark to denote retail services, including use of the trademark as its main service mark (collectively "Retail Services Tab trademark"). Examples of these uses follow:






**The Parties' Prior Agreements**

18. On January 12, 2007, LS&Co. filed a lawsuit against Warehouse, among others, asserting trademark and dilution, as well as related unfair competition claims based on Warehouse's use of infringing tabs. The case is titled *Levi Strauss & Co. v Self Edge, et. al.,* Case No. C-07-0245 PJH.

19. In 2008, to resolve the 2007 Lawsuit, LS&Co. and Warehouse entered a settlement agreement. Under the 2008 Agreement, Warehouse agreed to cease use of a number of source-identifying design elements that infringed LS&Co.'s trademarks, including Warehouse's use of infringing tabs and stitching design and to refrain from using designs similar to LS&Co.'s trademarks.

20. In 2014, LS&Co. learned that Warehouse resumed selling apparel bearing trademarks and designs prohibited by the 2008 Agreement. The parties entered into the 2014 Agreement to resolve LS&Co.'s claims against Warehouse. The 2014 Agreement prohibits Warehouse from manufacturing, licensing, selling, offering for sale, distributing, importing, exporting, advertising, promoting, or displaying garments anywhere in the world that display any of the prohibited designs or any design similar to LS&Co.'s trademarks.

**Defendants' Infringement of LS&Co.'s Tab and Arcuate Trademark and Breach of the Parties' Prior Settlement Agreement**

21. In blatant disregard of LS&Co.'s rights in the Tab and Arcuate trademarks, without authorization from LS&Co., and in violation of the parties' prior settlement agreement, LS&Co. has recently discovered that Defendant is promoting, offering for sale, and selling products, including apparel, bearing designs that imitate the Tab (the "Warehouse Infringing Tab") and Arcuate (the "Warehouse Infringing Stitching") trademarks. The Warehouse Infringing Tab and Warehouse Infringing Stitching are identical or nearly identical to designs that Defendant explicitly agreed not to use in the Prior Agreements. These infringing designs and logos are collectively referred to "Warehouse Infringing Designs." Examples of Defendant's products bearing the Warehouse Infringing Designs follow, in comparison with the infringing designs that Defendant previously committed not to use in the Prior Agreements:

| Design Prohibited by the Prior Agreements |
| --- |



| Examples of Warehouse Infringing Tab |
| --- |






DENIME
DENIME
CUSTOM MADE
GUARANTEED
PLEASE BUY'EM
LOOSE









**Design Prohibited by the Prior Agreements**



**Example of Warehouse Infringing Stitching**



22. The Warehouse Infringing Designs are highly similar to LS&Co.'s Tab and Arcuate trademarks and are used in connection with goods that directly compete with LS&Co. It is clear that the Warehouse Infringing Designs are intended to create an association with LS&Co. Defendant's

use of the Warehouse Infringing Designs have caused or will cause a likelihood of confusion among consumers regarding the source of Defendant's products, and whether LS&Co. is affiliated with Defendant, and/or whether LS&Co. has sponsored, licensed, or authorized Defendant.

23. The Warehouse Infringing Designs are also identical or nearly identical to the designs that Warehouse agreed to refrain from using in the Prior Agreements. The Warehouse Infringing Designs therefore amount to a blatant breach of the parties' prior agreement and infringe LS&Co.'s Tab and Arcuate trademarks.

24. Defendant began using the Warehouse Infringing Designs long after LS&Co.'s Tab and Arcuate trademarks became famous, and after Defendant acknowledged the fame and validity of LS&Co.'s trademarks and LS&Co.'s exclusive right to use those trademarks, throughout the world. The Warehouse Infringing Designs have caused or are likely to cause dilution of LS&Co.'s famous and distinctive Tab and Arcuate trademarks by diminishing their distinctiveness and singular association with LS&Co.

25. LS&Co. is informed and believes that Defendant has marketed and sold substantial quantities of products bearing the Warehouse Infringing Designs, and has profited and continues to profit from such sales. There is no doubt Defendant's conduct has been willful based on Defendant's prior express agreement to cease use of tab and stitching designs that infringe LS&Co.'s Tab and Arcuate trademarks, and the years of prior interactions, through lawsuits and agreements, between LS&Co. and Defendant.

26. In addition to causing damages, Defendant's actions have caused and will cause LS&Co. irreparable harm for which money damages and other remedies are inadequate. LS&Co. has attempted to resolve this matter short of litigation, but Defendant has failed to cease the infringing and breaching conduct. Defendant continues to promote and sell these infringing garments. Unless Defendant Warehouse is restrained preliminarily and permanently by this Court, it will continue and/or expand its illegal activities and otherwise continue to cause great and irreparable damage and injury to LS&Co. by, among other things:

a. Depriving LS&Co. of its rights to use and control use of its trademarks and maintain its reputation with consumers, licensees, and collaborators,

including the exclusive use of its trademarks on products and services that LS&Co. creates, produces, licenses, and sells;

b. Creating a likelihood of confusion, mistake, and deception among consumers and the trade as to the source of the infringing products and services;

c. Causing the public falsely to associate LS&Co. with Defendant and/or its products and services, or vice versa;

d. Causing incalculable and irreparable damage to LS&Co.'s goodwill, reputation and standing with consumers, licensees and collaborators;

e. Diluting the capacity of its Tab trademark to differentiate LS&Co.'s products from others;

f. Diluting the capacity of its Arcuate trademark to differentiate LS&Co.'s products from others;

g. Causing LS&Co. to lose sales of its genuine clothing products;

h. Causing others to believe the distinctive features of the Tab trademark may be misappropriated for their use;

i. Causing others to believe the distinctive features of the Arcuate trademark may be misappropriated for their use.

**FIRST CLAIM**

**FEDERAL TRADEMARK INFRINGEMENT**

**(15 U.S.C. §§ 1114-1117; Lanham Act § 32)**

27. LS&Co. realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 26 of this Complaint.

28. Without LS&Co.'s consent, Defendant has used—in connection with the sale, offering for sale, distribution, or advertising of its products and services—trademarks and designs, including the Warehouse Infringing Tab and Warehouse Infringing Stitching (examples of which are shown in this Complaint), that infringe upon LS&Co.'s registered Tab and Arcuate trademarks.

/ / /

29. Defendant's acts of willful trademark infringement have been committed with the intent to cause confusion, mistake, or deception, cause harm to LS&Co. and consumers, and are in violation of 15 U.S.C. § 1114.

30. As a direct and proximate result of Defendant's infringing activities, LS&Co. is entitled to recover all of Defendant's unlawful profits and LS&Co.'s substantial damages under 15 U.S.C. 1117(a).

31. Defendant's infringement of LS&Co.'s Tab and Arcuate trademarks is an exceptional case and was intentional, entitling LS&Co. to treble the amount of its damages and Defendant's profits, and to an award of attorneys' fees under 15 U.S.C. §§ 1117(a).

32. LS&Co. is entitled to injunctive relief pursuant to 15 U.S.C. 1116(a).

## SECOND CLAIM

## FEDERAL UNFAIR COMPETITION

### (False Designation of Origin and False Description)

### (15 U.S.C. § 1125(a); Lanham Act § 43(a))

33. LS&Co. realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 26 of this Complaint.

34. Defendant's use of the Warehouse Infringing Designs—including the Warehouse Infringing Tab and Warehouse Infringing Stitching shown by example in this Complaint—tends falsely to describe its products and services within the meaning of 15 U.S.C. § 1125(a)(1). Defendant's conduct is likely to cause confusion, mistake, or deception by or in the public as to the affiliation, connection, association, origin, sponsorship, or approval of Defendant and Defendant's products and services, to the detriment of LS&Co. and consumers in violation of 15 U.S.C. § 1125(a)(1).

35. As a direct and proximate result of Defendant's willful infringing activities, LS&Co. is entitled to recover all of Defendant's unlawful profits and LS&Co.'s substantial damages under 15 U.S.C. § 1117(a).

36. Defendant's infringement of LS&Co.'s Tab and Arcuate trademarks represents an exceptional case and was intentional, entitling LS&Co. to treble the amount of its damages and

Defendant's profits, and to an award of attorneys' fees under 15 U.S.C. § 1117(a).

37. LS&Co. is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

**THIRD CLAIM**

**FEDERAL DILUTION OF FAMOUS MARKS**

**(Trademark Dilution Revision Act of 2006)**

**(15 U.S.C. § 1125(c); Lanham Act § 43(c))**

38. LS&Co. realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 26 of this Complaint.

39. LS&Co.'s Tab and Arcuate trademarks are distinctive and famous within the meaning of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c), and were distinctive and famous prior to Defendant's conduct as alleged in this Complaint.

40. Defendant's conduct is likely to cause dilution of LS&Co.'s Tab and Arcuate trademarks by diminishing each of their distinctiveness in violation of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c).

41. Defendant diluted LS&Co.'s Tab trademark willfully, entitling LS&Co. to an award of damages and disgorgement of Defendant's profits.

42. LS&Co. is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116(a) and 1125(c).

**FOURTH CLAIM**

**CALIFORNIA TRADEMARK INFRINGEMENT AND DILUTION UNDER CALIFORNIA AND COMMON LAW**

**(Cal. Bus. & Prof. Code §§ 14200 *et seq*.; Cal. Bus. & Prof. Code § 14247)**

43. LS&Co. realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 26 of this Complaint.

44. LS&Co. owns registered and common law rights in its Tab and Arcuate trademarks.

45. Defendant's use of the Warehouse Infringing Designs—which are substantially similar to the Tab and Arcuate trademarks—occurred without LS&Co.'s consent.

46. LS&Co.'s Tab and Arcuate trademarks became famous in California long before Defendant began using its infringing trademarks and designs.

47. Defendant's use of the Warehouse Infringing Designs is likely to cause consumer confusion about the source of Defendant's goods and services or about a relationship between LS&Co., and Defendant and is likely to dilute LS&Co.'s Tab and Arcuate trademarks, in violation of California Business & Professions Code §§ 14200 et seq., California Business & Professions Code § 14247, and California common law.

48. Defendant infringed and diluted LS&Co.'s Tab and Arcuate trademarks with knowledge and intent to cause confusion, mistake, or deception.

49. Defendant's conduct is aggravated by that kind of willfulness, wantonness, malice, and conscious indifference to the rights and welfare of LS&Co. for which California law allows the imposition of exemplary damages.

50. Pursuant to California Business & Professions Code §§ 14247 and 14250, LS&Co. is entitled to injunctive relief and damages in the amount of three times Defendant's profits and three times all damages suffered by LS&Co. by reason of Defendant's manufacture, use, display, and sale of infringing goods and services.

**FIFTH CLAIM**

**CALIFORNIA UNFAIR COMPETITION**

**(Cal. Bus. & Prof. Code § 17200)**

51. LS&Co. realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 26 of this Complaint.

52. Defendant's conduct constitutes "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising" within the meaning of California Business & Professions Code section § 17200.

53. LS&Co. is entitled to injunctive relief preventing the conduct alleged in this Complaint.

**SIXTH CLAIM**

**BREACH OF CONTRACT UNDER CALIFORNIA COMMON LAW**

54. LS&Co. realleges and incorporates by reference each of the allegations contained Paragraphs 1 through 26 of this Complaint.

55. In 2008, LS&Co. and Defendant entered into a contract, which is binding on Defendant, as well as Defendant's subsidiaries, affiliates, licensees, successors and any related companies under common control.

56. Through the parties' 2008 Agreement, Defendant promised that it had stopped manufacturing and selling products bearing the designs that were the subject of LS&Co.'s 2007 Lawsuit, and "any designs substantially similar to" the designs that were the subject of LS&Co.'s 2007 Lawsuit or LS&Co.'s Trademarks. LS&Co. relied on those promises.

57. Defendant is now selling products bearing the Warehouse Infringing Designs, in direct breach of the parties' Prior Agreements, including the restrictions in the 2008 Agreement described and quoted in this Complaint.

58. As a result of Defendant's breach of the agreement, LS&Co. has suffered damages and, in reliance of Defendant's promises, declined to seek further relief that otherwise would have stopped Defendant's ongoing infringement and dilution of LS&Co.'s marks.

59. LS&Co. is entitled to damages caused by Defendant's breach, including liquidated damages, an injunction requiring specific performance of Defendant's promises, as well as other damages due to LS&Co. based on the terms of the parties' Prior Agreements.

## PRAYER FOR JUDGMENT

WHEREFORE, LS&Co. prays that this Court grant it the following relief:

1. Adjudge that Defendant infringed LS&Co.'s Tab trademark in violation of LS&Co.'s rights under common law, 15 U.S.C. § 1114, and/or California law;

2. Adjudge that Defendant infringed LS&Co.'s Arcuate trademark in violation of LS&Co.'s rights under common law, 15 U.S.C. § 1114, and/or California law;

3. Adjudge that Defendant has competed unfairly with LS&Co. in violation of LS&Co.'s rights under common law, 15 U.S.C. § 1125(a), and/or California law;

4. Adjudge that Defendant's activities are likely to dilute LS&Co.'s famous Tab trademark, in violation of LS&Co.'s rights under common law, 15 U.S.C. § 1125(c), and/or California law;

/ / /

5. Adjudge that Defendant's activities are likely to dilute LS&Co.'s famous Arcuate trademark, in violation of LS&Co.'s rights under common law, 15 U.S.C. § 1114, and/or California law;

6. Adjudge that Defendant and its agents, employees, attorneys, successors, assigns, affiliates, and joint venturers and any person(s) in active concert or participation with it, and/or any person(s) acting for, with, by, through or under it, be enjoined and restrained at first during the pendency of this action and thereafter permanently from:

a. Manufacturing, producing, sourcing, importing, exporting, selling, buying, offering for sale, distributing, licensing, advertising, or promoting any goods or services, using any words, symbols or designs that so resemble LS&Co.'s Tab trademark as to be likely to cause confusion, mistake or deception, on or in connection with any product or service that is not authorized by or for LS&Co., including without limitation, the infringing trademarks and designs that are the subject of this Complaint and for which Defendant is responsible, or any other approximation of LS&Co.'s trademarks;

b. Manufacturing, producing, sourcing, importing, exporting, selling, buying, offering for sale, distributing, licensing, advertising, or promoting any goods or services, using any words, symbols or designs that so resemble LS&Co.'s Arcuate trademark as to be likely to cause confusion, mistake or deception, on or in connection with any product or service that is not authorized by or for LS&Co., including without limitation, the infringing trademarks and designs that are the subject of this Complaint and for which Defendant is responsible, or any other approximation of LS&Co.'s trademarks;

c. Using any word, term, name, symbol, device, design, or combination thereof that causes or is likely to cause confusion, mistake, or deception as to the affiliation or association of Defendant's products and services

with LS&Co. or as to the origin of Defendant's goods and services, or any false designation of origin, false or misleading description or representation of fact, or any false or misleading advertising;

d. Claiming trademark rights in the Warehouse Infringing Tab, or any other word, symbol, or design that is confusingly similar to the Tab trademark, including by applying now or in the future for federal registration of trademarks comprising the Warehouse Infringing Tab or any other word, symbol, or design that is similar to the Tab trademark;

e. Claiming trademark rights in the Warehouse Infringing Stitching, or any other word, symbol, or design that is confusingly similar to the Arcuate trademark, including by applying now or in the future for federal registration of trademarks comprising the Warehouse Infringing Stitching or any other word, symbol, or design that is similar to the Arcuate trademark;

f. Infringing LS&Co.'s rights in and to any of its trademarks or otherwise damaging LS&Co.'s goodwill or business reputation;

g. Further diluting the Tab trademark;

h. Further diluting the Arcuate trademark;

i. Otherwise competing unfairly with LS&Co. in any manner; and

j. Continuing to perform in any manner whatsoever any of the other acts complained of in this Complaint;

7. Adjudge that Defendant has breached its contract with LS&Co.;

8. Adjudge that Defendant is required immediately to supply LS&Co.'s counsel with a complete list of individuals and entities from whom or which it purchased, and to whom or which it sold, offered for sale, distributed, advertised or promoted, infringing products and services as alleged in this Complaint;

9. Adjudge that Defendant is required immediately to deliver to LS&Co.'s counsel its entire inventory of infringing products and services, including without limitation shirts, shorts,

rompers, pants, dresses, and any other clothing, packaging, labeling, photographs, advertising and promotional material, and all plates, patterns, molds, matrices and other material for producing or printing such items, domain names, or social media handles that are in its possession or subject to its control and that infringe or facilitate infringement of LS&Co.'s trademarks as alleged in this Complaint;

10. Adjudge that Defendant, within thirty (30) days after service of the judgment demanded herein, is required to file with this Court and serve upon LS&Co.'s counsel a written report under oath setting forth in detail the manner in which it has complied with the judgment;

11. Adjudge that LS&Co. recover from Defendant its damages and lost profits, and Defendant's profits, in an amount to be proven at trial, as well as punitive damages under California law;

12. Adjudge that Defendant is required to account for any profits that are attributable to its illegal acts, and that LS&Co. be awarded (a) Defendant's profits and (b) all damages sustained by LS&Co., under 15 U.S.C. § 1117, plus prejudgment interest;

13. Adjudge that the amounts awarded to LS&Co. pursuant to 15 U.S.C. § 1117 shall be trebled;

14. Order an accounting of and impose a constructive trust on all of Defendant's funds and assets that arise out of its infringing and dilutive activities;

15. Adjudge that LS&Co. be awarded its costs and disbursements incurred in connection with this action, including LS&Co.'s reasonable attorneys' fees and investigative expenses; and

16. Adjudge that all such other relief be awarded to LS&Co. as this Court deems just and proper.

/ / /

/ / /

/ / /

Dated: November 16, 2026

Respectfully submitted,

VERSO LAW GROUP LLP

By: */s/ Ryan Bricker*

Gregory S. Gilchrist
Ryan Bricker
Sophy Tabandeh
Kourtney Speer

Attorneys for Plaintiff
LEVI STRAUSS & CO.

**DEMAND FOR JURY TRIAL**

Levi Strauss & Co. demands that this action be tried to a jury.

Dated: November 16, 2026

Respectfully submitted,

VERSO LAW GROUP LLP

By: */s/ Ryan Bricker*
Gregory S. Gilchrist
Ryan Bricker
Sophy Tabandeh
Kourtney Speer

Attorneys for Plaintiff
LEVI STRAUSS & CO.